### DYER, et al v. MANDT, et ux.
No. 75-8735-CA.

Circuit Court, Duval County.

September 29, 1976.

Ander Crenshaw, Jacksonville, for the plaintiffs.

Haimowitz & Shorstein, Jacksonville, for the defendants and third-party plaintiffs.

Harold B. Wahl of Wahl & Gabel, Jacksonville, for the third party defendants.

THOMAS J. SHAVE, Jr., Circuit Judge.

This cause came on to be heard on due notice on motion of third-party defendant Real Resources Group, Inc., publisher of *Auto Week* magazine ("Resources" hereafter) to dismiss for lack of jurisdiction and insufficient service of process under the Florida Long Arm Statute, Chapter 48, Florida Statutes.

The court, by its order of August 24, 1976, withheld ruling on such motion until further hearing, at which time the parties were to present evidence to determine the jurisdiction and sufficiency of service of process.

Under *Elmex v. Atlantic* (Fla. DCA-4, 1976) 325 So.2d. 61-63, such evidence can be by affidavit.

Pursuant to the court's order of August 24, 1976, third-party defendant Resources filed an affidavit of its president on his personal knowledge as follows —

Resources is a corporation under the laws of California, which publishes *Autoweek*, has its principal business office at Reno, Nevada, and neither it nor *Autoweek* have offices, officers, agents, employees, bank accounts, telephone listings, books of account, or any books and records, goods, or stored, leased or owned property in Florida. It publishes *Autoweek* weekly. Its offices and facilities for publishing and printing are located in Reno, Nevada.

It sells its publications through subscriptions which are delivered by mail. It also sells to what it calls "Bulk Dealers." These are people who subscribe for more than one copy; most subscribe for five copies. These Bulk Dealers then have the option to sell, give away, or do whatever they wish with their extra copies of the particular publication. They do not have the option to return any copies to the publisher. Resources exercises no control of any kind over the "Bulk Dealers."

The *Autoweek* editorial staff is located in Reno; however, a staff member does travel into the state of Florida a maximum of two times each year to cover auto races at Daytona and Sebring. For other, lesser known races, it retains photographers and stringers locally.

Neither Resources nor *Autoweek* has any offices, officers, agents or employees in Florida and defendant's factual situation as to Florida situs or control or jurisdiction is in all respects practically identical with that of the publisher-defendants in *Fawcett Publications, Inc. v. Rand* (Fla. DCA-3, 1962) 144 So.2d. 512; *Talcott v. Midnight Publishing Company* (USCA-5, 1970) 427 Fed.2d. 1277, cited in *Dinsmore v. Martin Blumenthal* (Fla. 1975) 314 So.2d. 561, at 565; and *Buckley v. Florida Publishing Company, et al.* (USCA-5, 1964) 338 Fed.2d. 470.

Third-party plaintiff has not produced any evidence by affidavit or otherwise to contradict this.

However, on September 14, 1976 (some 21 days after the court's order aforesaid), it propounded interrogatories to third-party defendant Resources, which interrogatories Resources answered promptly in advance of the due date in order to give the court all available facts at the hearing set by the court for September 29, 1976.

The sworn answers to the interrogatories (which are again not contradicted by third-party plaintiff) show that there are 27 independent bulk dealers in Florida over whom Resources exercises no control and to whom approximately 170 copies or .0027% of *Auto Week* magazine are shipped; that there are approximately two independent photographers and stringers in Florida over whom Resources exercises no employer control who on occasion send material to *Auto Week;* that solicitation of subscriptions to *Auto Week* is by advertisements in national magazines; and that the staff members who come to Florida to cover auto races at Daytona and Sebring come within the definition by the court of "sporadic news gathering by reporters on special assignment" for only a few days a year.

In short, the activities and contacts of third-party defendant Resources with Florida come within the holding of the United States Court of Appeals for the Fifth Circuit in *Buckley v. Florida Publishing Company, et al.* (1964) 338 Fed. 2d. 470, as follows —

"***** that sporadic news gathering by reporters on special assignment and solicitation of small amounts of advertising do not constitute a newspaper's 'doing business' nor 'engaging in business activity' within a state as predicate for substituted service upon a foreign newspaper publishing corporation having no continuous and systematic activities in Louisiana but having at most casual presence therein did not have requisite minimum contacts with state to make it reasonable and just and in conformity with due process requirements of Fourteenth Amendment for Louisiana to enforce against them obligations arising out of such activities under substituted service statute."

In *Dinsmore v. Blumenthal* (Fla. 1975) 314 So.2d. 561, the court cited and expressly followed the earlier cases of *Fawcett v. Rand* (Fla. DCA-3, 1962) 144 So.2d. 512; *Jenkins v. Fawcett* (USDC, ND, Fla. 1962) 204 Fed. Supp. 361; and *Talcott v. Midnight Publishing* (USCA-5, 1970) 427 F.2d. 1277; and held there was insufficient Florida control over brokers, jobbers, sellers or distributors selling the product in Florida to give Florida jurisdiction.

It is clear that the facts here fit these Florida and federal cases and that this court has no jurisdiction over third-party defendant Resources.

It is therefore ordered and adjudged that the motion of third-party defendant Resources to dismiss for want of jurisdiction and insufficient service of process is granted; and that this cause is dismissed as to third-party defendant Resources, with prejudice.